May it please the court. Good morning. Good morning. Andrea Yam, swollen on behalf of appellant Patrick Kitlas. The issue before this court on appeal is whether the prosecutor in striking the two and only black jurors from the panel violated Batson. The prosecutor at the federal evidentiary hearing testified that she struck juror 7243, who I'll focus on this morning, because she worked with Amnesty International and received mental health training. The record clearly undermines both reasons and compels a finding that the reason was pretextual at step three of the analysis. I'll start with the amnesty reason, which is undermined by the record in two key ways. First, the prosecutor said she kept the juror. She never kept a juror that worked with Amnesty. If true, the prosecutor would have struck this juror at the first possible opportunity. This juror was... How can you really say that? Have you ever been a prosecutor or a defense counsel in trial court? I've never done... Okay, but you have a certain amount of challenges and you're always worried about who's better, who's worse. So you don't always just... You can't always strike everyone you want to strike. That's true. And you don't always do it in a certain order, because you might be hoping your co-counsel strikes that person and you don't have to waste a challenge. So I think that comment sort of belies what happens in a trial court. They don't just strike someone first, because that doesn't hold any water for me. Okay. I would just note, though, that there were three rounds of peremptory strikes and the prosecutor waited until the second round to strike that juror. But I'll also note that this prosecutor testified at the evidentiary hearing that she didn't strike jurors of color unless she had a very specific reason to strike them. And with regard to... So the specific reason she gave was that she was concerned about the juror's work with victims and the fact that she had volunteered with Amnesty International, which in a case involving confession might make her overly sympathetic. Why isn't that a perfectly legitimate race-neutral reason? So this juror testified specifically that she worked with individuals who are victimized. And she went on to describe the nature of her work. But I think that at all points during voir dire, she described herself as a person that worked with victim advocates. And she also noted, in response to one of the court's questions, that if a defendant is indeed innocent, that he should speak up. And so I think the statements that the juror made during voir dire suggest that she wasn't sympathetic to the defense. And at no point did she say anything that suggested that she was... You have to put it in context. This juror was the first juror struck of the two at issue, correct? Yes, correct. And there's no objection... Right. ...to the striking at that point. So even on its face, it looks like it's a neutral strike. And the prosecutor then testified, very concerned about keeping anyone, especially in a case where you have a confession at issue. Why isn't that a legitimate reason for the prosecutor to strike a juror? So juror 7243 and juror 8053 were stricken, I think, within a couple of strikes of each other. And it was all during the second round of peremptory strikes. So I think if you think about how quickly jury selection moves and how quickly the peremptory strikes move, the fact that the defense attorney objected to the strike of juror 7243 just a couple of minutes after she was stricken, I don't think, is maybe at most, at best, weak circumstantial evidence. Well, but I think what Judge McEwen's saying is there was not a finding of a prima facie case when the first juror was stricken. And so there was no reason for the prosecutor to put on the record the reasons at that point. You only are required to do that when the judge finds that there's a prima facie case. Do you understand that? Right. Well, I think the... The prima facie case happened later, right? Right. Well, the prima facie case happened after the defense objected to the strike of juror 8053. And the prosecutor noted, or I'm sorry, the defense counsel noted that the prosecutor struck both, at that point, both black jurors from the panel. And I think the case appears to have misapplied the first step of Batson. Defense counsel need only have shown that there was an inference of discrimination. The trial court obviously found that the strike of 8053 raised an inference of discrimination. The fact that defense counsel objected to the fact that both black jurors, the only black jurors from the panel, were stricken, the fact that the prosecutor had noted previously during the E-type jury selection that the prosecutor had stricken... How familiar are you with the facts of this case, the underlying facts of the case? The underlying facts? I'm not very familiar with them. All right. Well, there was a confession, right? And there were two defendants. And either your client or the other client actually killed the person, even though... So, but your client took responsibility for it in the confession. All right. So the confession was pretty important in terms of establishing the culpability of your client. And a confession is not an officer or someone of the government. Can you understand why a prosecutor would be concerned about someone that had worked in organizations that had a suspicion of government atrocities and false confessions? Yes. So now why is that not race neutral? So I can understand that a prosecutor can have a concern about that, but we have to the fact that this is a reconstructed reason, that this reason was given, I believe it was seven years after the trial had occurred when the prosecutor said she couldn't remember the actual reason for the strike. And so we have to... But did the court actually held her hearing, right? Yes. Did the court find her to be credible? Yes. The court made a credibility finding that the prosecutor... And the prosecutor basically testified, this is an experienced trial lawyer. And I can tell you from having done like 60 jury trials, there were certain type of jurors I didn't like in certain type of cases, which had nothing to do with race. She basically testified what would be the red flags for her of someone with that demographic and the court accepted it. So who has the burden here to show that it was based on race? It's our burden. All right. So I've just given you another scenario where the court could have gone. So why does your burden overcome that? What is your evidence overcome that? So I think that the prosecutor can say seven years after the trial, this is why I struck the juror. But at this point in time, because it's a reconstructed reason, we have to be looking in the record for evidence that contradicts that reason. The judge believed her. The judge could have not believed her, right? The judge could have said, oh, that just doesn't make any sense. Or I know you because I think you went into that there was another trial, the co-defendant trial. The judge could have said, I just don't believe that. And if the judge had not believed that, then you'd be in a better position, obviously. Right. Well, if there's clear error in the judge's finding, obviously. So now think what Judge what is the contra evidence that would undermine the court's finding with respect to credibility and a race-neutral justification? Our best reason with respect to the amnesty is that the Amnesty International is not written on the notes. And that is contrary to the prosecutor's own testimony that she writes down the reasons for her strikes on her notes, particularly with respect to jurors. But is there any question that the juror did testify that she volunteered for Amnesty International? No, she did testify that. Do you want to talk about juror 8053? Actually, if your honors would permit me to, I'd like to talk about the mental health reason as well. Because the prosecutor spoke about two reasons for striking juror 7243. And one of those reasons was that she worked in mental health. The prosecutor said that she struck this juror because she received mental health training. And the words mental health is on the notes. But at best that note contains both reasons to credit the prosecutor's reason as well as reasons to find that the prosecutor's strike was at least in part motivated by race. I don't understand how the notation, contemporaneous notation as to mental health, which evidences the prosecutor's concern, shows that it was a race-motivated peremptory challenge. So the note also contains favorable evidence about this juror, including that she previously had sat on a jury that came to a verdict, that her sister was in the military, and that she was a victim's advocate. The fact that she wrote victim's advocate, it's our position that writing victim's advocate does not adequately remind the prosecutor in the context of jury for Amnesty International. Do you want to save your remaining time? Yes. Thank you. May it please the court. Good morning. Deputy Attorney General Michael Keller for Respondent, the Warden. This Batson case presents a step three question as to each of the prospective jurors that were challenged. There has been a judicial finding of fact that the prosecutor stated race-neutral reason was genuine. These factual findings are entitled to deference. For 8053, that occurred in state court. For 7243, that occurred in the district court. The burden of proof in the district court remained with petitioner, and now on appeal, they have to show that that finding of fact regarding the race-neutral reasons being genuine, that that was clearly erroneous. They can't do that. It appears the prosecutor didn't remember reasons for excusing a lot of years later. Did this render her testimony speculative and thus not entitled to any weight pursuant to our opinion in Paulino v. Harrison? No, Your Honor. In the Shirley case, this court talked about when a prosecutor, this is the difference between speculation and a reconstructed reason. A reason can be reconstructed where even when the prosecutor doesn't have an independent recollection, they testify regarding their general approach and how that approach would have applied. Here we had really far more than what they had in Shirley. We have not only the prosecutor testifying at the evidentiary hearing about her approach to selection of jurors who had worked with Amnesty International saying, and this is on excerpt page 183, I would be very uncomfortable keeping a juror like that on any trial, but specifically a trial involving a confession, I would never do it. So we have a very specific testimony that she wouldn't keep such a juror on. And then it's buttressed by what happened in terms of both the post-it note, the contemporaneous post-it note where she highlighted what the jurors work as a victim advocate. It didn't say Amnesty International there, but it focused on the work and the trial transcript. And the trial transcript really gives us great insight into what the prosecutor was thinking with regard to 7243. First of all, the trial court gave very little time for jury selection and for asking of questions. But when it came to 7243's work, the prosecutor spent a great deal of time trying to figure out how this might play in. Specifically, the prosecutor asked 7243 whether or not her work had included people who were victims of government agencies. After the answer was yes, the prosecutor continued and said, have you dealt with people who claim to have given a false confession? So that clearly shows this is exactly what the prosecutor testified at the evidentiary hearing, is she was worried that a juror who worked with an agency like Amnesty International, which would be distrustful of the government. In this case, in this court, in Polk v. Dickinson, has previously upheld challenges against a juror for having worked with that organization. But it continues because the prosecutor asks more questions and says, would this affect the way you would look at the police in this case? And the prospective juror gives a somewhat equivocal answer saying, I don't think so. Then the prosecutor, this is now turning from excerpt page 275 to 276, and the final question is, the prosecutor asks, has any of your counseling or work you've done been associated with Amnesty International? And the prospective juror says, it's of that nature and I've done work with people through that group. Yes. And the prosecutor doesn't ask any more questions once she receives the Amnesty International response. As the court noted earlier, in a case where there is a confession, it's extremely important to not have jurors who are distrustful of government. And that's one thing that was shared between 8053 and 7243, was a potential that they would be distrustful of the government. You have one who failed to report being the victim of an armed robbery, and then you have 7243 who's worked with an organization like Amnesty that seeks to overturn many provisions. The prosecutor, I think, did note one of the persons, I think 7243's race, right? That is correct. And my understanding is there were only two African-American jurors, right? And so both of them were stricken with peremptory challenges. And the defendant is Caucasian. The witnesses were all Caucasian. There was no cross-racial identifications or race was not an issue in the case. All right. Clearly, that just because someone is not your race, you can still bring a Batson challenge, right? That is correct. Right, so it can't be like, okay, well, I'm Caucasian, and I can still challenge taking all the black jurors off, right? Does it matter, though, that there's no race issue here and that they aren't the same race? Is that something that can even be considered on any level in these type of cases? I think it's something, it's a factor that can be considered. But in the end, the reason the district court was in the position of deciding credibility, and it considered the fact of the notation itself, and it considered all the factors that were in front of it, and it made that factual finding. And opposing counsel says that her best reason, she said at oral argument here, was that it didn't say amnesty on the notes. But if you look at the note of 7243, it actually highlights the fact of her work, which is, again, consistent with what she said at the evidentiary hearing. So... When you say highlights, was it like... With the highlighter, yes. A highlighter pen. Yes, yes, focusing on that work. And again, we have the transcript at trial, which gives great insight into what the prosecutor was concerned about, coupled with the note itself showing that she was concerned about this prospective juror's work. You put that together, and you have the very clear evidentiary hearing testimony, and the district court naturally found that that was... And the district court had an opportunity to evaluate the credibility of this prosecutor when she testified. The court made that credibility determination and found her to be genuine in her stated reasons. One of the other issues that came up here is the prosecutor's conduct in a completely different case. What is your view on whether that can factor into totality of the circumstances? Yes, so I think under Williams, what the prosecutor's done in selecting somebody else's jury isn't relevant. Having said that, I think the... And when it does come in, it's really a step one consideration typically. But the ITF jury, if anything, tends to support what happened here. In that case, or in selecting that jury, first of all, I'd note that there were two African Americans that ultimately sat on that jury. And it also was consistent there with the prosecutor saying that they... That she sometimes gave notes and sometimes didn't. There were, if you look at the 12 jurors that sat on that case, there was one notation of a male white, one notation of a male black, and some that had no notations of race whatsoever. So there's nothing in the ITF jury that would tend to show clear error. And again, the district court didn't accept our objection to the ITF and took it all into account. So that was certainly considered by the district court in rendering its judgment and its factual finding regarding the prosecutor's stated reasons. In this case, the prosecutor challenged a grand total of two prospective jurors from Petitioners of New York who happened to be African American. She did so out of a genuine fear that they had a distrust of government. And that was particularly important in this case, given the fact that there was a confession obtained from the police. This court should defer to the factual findings of the district court and the state court and affirm the judgment. Thank you. Thank you. We have about 40 seconds left. I'll give you a minute if you'd like to start off. I'll just point out one thing. So when the prosecutor was asking this juror about her work, the juror stated that she worked with victims who had experienced the Holocaust, who had fled Vietnam, and who were victims of natural disasters. And that is distinct from – a person can be opposed to these kinds of issues and experiences and sympathize for the victims that have gone through those experiences and not necessarily be opposed to the police and the government in the United States. Well, except for – what, there was like 20 minutes for voir dire? Right. All right. So you have to accept the fact that to some extent you can't get to know these people, like you can't spend a weekend with them or anything like that. So prosecutors and defense lawyers are required to use, you know, proxies. They're required – you can't use race, but they're required to look at certain things and decide, well, given the time that I have, would this be a good juror? It's true. Maybe that person would be a good juror, but maybe they wouldn't because they've been – that person's been involved with victims of tyrannical regimes. That being said, why does that – do they have to keep someone like that? Why is that race? Because in this – I think if the juror had only said, you know, I donate to Amnesty International or I sympathize with the cause of Amnesty International generally, I think the prosecutor could use that statement and would have to in that moment use a generalization and strike that juror. But because this juror specifically discussed what she does, the work that she does, I work with victims of natural disasters of the Holocaust in Vietnam, the prosecutor I think in this situation had enough information to know that the prosecutor – that this juror didn't necessarily sympathize with the defense that she was more prosecution-oriented. Thank you. Thank you. Thank you also for your argument this morning. The case of Kitlas v. Hawes is submitted.
judges: McKeown, Callahan, Nguyen